1

2

3

4

**E-FILED on ___1/6/10_____**

5

6

7

8

IN THE UNITED STATES DISTRICT COURT

9

FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

SAN JOSE DIVISION

11

12

MARC L. PINCKNEY,

No. C-08-04485 RMW

13

Plaintiff,

14

v.

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

15

CITY OF SAN JOSE, CITY OF SAN JOSE
CHIEF OF POLICE ROBERT DAVIS in his

16

individual capacity and official capacity as
Chief of Police for the CITY OF SAN JOSE,

**[Re Docket No. 27]**

17

POLICE OFFICER RODRIGUEZ #2360,
individually, and DOES 1 through 20,

18

Defendants.

19

20

21

Plaintiff Marc L. Pinckney, proceeding pro se, brings this action against defendants City of

22

San Jose ("City"), City of San Jose Chief of Police Robert Davis, and Officer Rodriguez #2360 for

23

claims arising out of plaintiff's arrest on June 13, 2007.  Plaintiff asserts claims for violation of his

24

civil rights under 42 U.S.C. § 1983 and Cal. Civ. Code § 52.1, for negligence, and for intentional

25

infliction of emotional distress.  Defendants move for summary judgment on all claims.  Plaintiff

26

opposes the motion.  The court heard argument on the motion on December 11, 2009.  The court has

27

read the moving and responding papers and considered the arguments of counsel.  For the reasons

28

set forth below, the court GRANTS defendants' motion for summary judgment.

**United States District Court**
For the Northern District of California

1

### I. FACTS

2      At the time of plaintiff's arrest, he was married to Elena Pinckney ("Ms. Pinckney") and had

3  a four year old daughter, Ninel Pinckney ("Ninel").  Declaration of Marc L. Pinckney ("Pinckney

4  Decl.") ¶ 9.  Ms. Pinckney had a history of abusing alcohol and prescription medications.  *Id.*

5  Between May 2005 and December 2006, there were multiple occasions on which Ms. Pinckney

6  passed out from alcohol consumption and had to be transported by ambulance to the hospital for

7  evaluation.  *Id.*  According to plaintiff, Ms. Pinckney would fall down due to extreme intoxication

8  and sustain severe bruising.  *Id.*  On July 7, 2006, plaintiff filed a petition for divorce because of Ms.

9  Pinckney's alcoholism.  *Id.* ¶ 10.  Afterwards, plaintiff encouraged Ms. Pinckney to seek treatment

10  and, because of her efforts, took no further action to proceed with the divorce.  *Id.*  After a relapse in

11  December 2006, it was agreed that if Ms. Pinckney began consuming alcohol again, plaintiff would

12  proceed with the divorce and Ms. Pinckney would move out of the family home.  *Id.* ¶ 11.

13      On June 10, 2007, Ms. Pinckney appeared intoxicated and plaintiff advised her that if she

14  was drinking again, she would have to leave the family home.  *Id.* ¶ 12.  On June 11, 2007, it

15  appeared to plaintiff that Ms. Pinckney had been consuming alcohol to  the point that it affected her

16  speech and coordination, and Ninel found a large kitchen knife under Ms. Pinckney's pillow, which

17  Ms. Pinckney admitted to placing there.  *Id.*  Two days later, on June 13, 2007, plaintiff met with a

18  licensed clinical social worker to explore treatment possibilities for Ms. Pinckney.  *Id.* ¶ 14.  He

19  returned home some time after 2:00 p.m. and found Ms. Pinckney apparently asleep on Ninel's bed.

20  *Id.* ¶ 15.  When he woke her, she allegedly "acted very paranoid and disoriented."  *Id.*  She went to

21  the kitchen and called 911.  *Id.*  Plaintiff heard the operator say that police were on the way.  *Id.*  Ms.

22  Pinckney then went into the garage with the telephone, and plaintiff went to the front of the home to

23  wait for the police.  *Id.* ¶¶ 15-16.

24      Officer Rodriguez was the first officer to arrive on the scene.  *Id.* ¶ 16.  Plaintiff advised him

25  of the above facts.  *Id.*  Officer Rodriguez also spoke with Ms. Pinckney.  Officer Rodriguez

26  observed that she was intoxicated and was upset and very emotional.  Declaration of Richard D.

27  North ("North Decl."), Ex.  D ("Rodriguez Depo.") at 42:21-22.  He also noticed bruising on her

28  arms and legs that, based on their color, had not happened that day.  *Id.* at 44:16-46:4.  Ms. Pinckney

**United States District Court**
For the Northern District of California

appeared to be afraid of anyone, including Officer Rodriguez and plaintiff. *Id.* at 44:9-13. She was crying and screaming. *Id.* at 44:5. Ms. Pinckney initially told Officer Rodriguez that her bruises were from falling. *Id.* at 51:2-6. She then changed her story and said plaintiff hit her. *Id.* at 49:17-22. Later, she said she was lying with respect to the plaintiff having hit her and said she got the bruises when she fell. *Id.* at 51:10-15. Officer Rodriguez spoke with Ms. Pinckney for about five minutes. *Id.* at 51:20-52:1.

Around this time, a second officer, Courtney Adamo, arrived and spoke with Ms. Pinckney. Pinckney Decl. ¶ 16. Ms. Pinckney initially told Officer Adamo that she was scared of plaintiff because he was an attorney and she thought the police would not help because he was an attorney. North Decl., Ex. E ("Adamo Depo.") at 41:8-17. Ms. Pinckney also said that she was afraid because she thought plaintiff would have her deported and have Ninel taken away from her. *Id.* at 33:8-11. Ms. Pinckney stated that on June 11, 2007, she had been in bed with plaintiff and plaintiff kicked her. *Id.* at 46:5-50:1. She said she had not reported the incident then because she was afraid plaintiff would kill her. *Id.* Officer Adamo observed bruises on the top of Ms. Pinckney's legs which appeared consistent with either being kicked or falling and hitting furniture. *Id.* at 50:14-16, 51:6-12. Ms. Pinckney indicated that the bruises had been caused by the kick. *Id.* at 53:5-9. She said she had suffered domestic violence on other previous occasions but was unable to give dates or times. *Id.* at 49:6-16, 60:6-11. Ms. Pinckney also stated that plaintiff made her go to the hospital and say she was crazy to get medication that he wanted her to take. *Id.* at 32:21-25.

After Officer Adamo completed her interview of Ms. Pinckney, the officers at the scene held a meeting and Officer Adamo shared the information she had obtained. Rodriguez Depo. at 61:7-17. The officers agreed "that an arrest had to be made for domestic violence." *Id.* In Officer Rodriguez's words, "there was no question" about whether domestic violence had occurred "[w]ith [Ms. Pinckney's] demeanor on being afraid of the plaintiff, of sleeping with a knife underneath her, calling because the plaintiff came home, saying that the plaintiff struck her, [and] having bruises." *Id.* at 76:14-18. Similarly, Officer Adamo believed "[p]robable cause existed that a . . . domestic violence felony had occurred based on the evidence which was collected, the statements that were

United States District Court
For the Northern District of California

1   provided and the consistency of the injuries, with the statements of the victim."  Adamo Depo. at

2   63:25-64:4.

3       Plaintiff was informed that he was going to be arrested but was not told of Ms. Pinckney's

4   factual allegations.  Pinckney Depo. ¶¶ 19-20.  Nor did Officer Rodriguez interview plaintiff.

5   Rodriguez Depo. at 52:22-53:10.  Officer Rodriguez explained that "[plaintiff] was telling me that

6   he didn't strike the victim when told why he's being detained.  And he was also telling me that she

7   was mentally unstable and intoxicated.  So he was already denying domestic violence.  So any other

8   further interview, I believe he would say the same thing."  *Id.*  When Ms. Pinckney found out that

9   plaintiff was being arrested, she recanted her statements that plaintiff had hit her.  Adamo Depo. at

10  80:22-81:1; North Decl., Ex. B ("E. Pinckney Depo.") at 35:13-19.

11      Plaintiff was held for two days before being released on bond.  Pinckney Decl. ¶ 22.  No

12  charges were ever brought by the Santa Clara County District Attorney.  *Id.* ¶ 23.

## II. ANALYSIS

### A.    Legal Standard

15      Summary judgment is appropriate when "the pleadings, the discovery and disclosure

16  materials on file, and any affidavits show that there is no genuine issue as to any material fact and

17  that the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Material facts

18  are those which may affect the outcome of the case and a dispute as to a material fact is "genuine"

19  only if there is sufficient evidence for a reasonable trier of fact to decide in favor of the nonmoving

20  party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The moving party has the initial

21  burden to demonstrate that no genuine issue of material fact exists.  *Celotex Corp. v. Catrett*, 477

22  U.S. 317, 321 (1986).  Where a defendant moves for summary judgment on an issue for which the

23  plaintiff bears the burden of proof at trial, the defendant may meet its burden by showing that there

24  is an absence of evidence to support the non-moving party's case, *id.* at 325, or by submitting

25  affirmative evidence that disproves an essential element of the plaintiff's claim, *Adickes v. S.H.*

26  *Kress & Co.*, 398 U.S. 144, 158-60 (1970).  Once the moving party has met its burden, the

27  nonmoving party has the burden of coming forward with admissible evidence setting out specific

28  facts showing a genuine issue for trial.  Fed. R. Civ. P. 56(e)(2).  All justifiable inferences from the

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT—No. C-08-4485 RMW
LJP                                                    4

1  evidence are to be drawn in favor of the nonmoving party. *See Eastman Kodak Co. v. Image*

2  *Technical Servs., Inc.*, 504 U.S. 451, 456 (1992).

3      **B.      Section 1983 Claims**

4      Plaintiff asserts claims pursuant to 42 U.S.C. § 1983 for violation of his right to be free from

5  unreasonable searches and seizures under the Fourth and Fourteenth Amendments.  Defendants

6  argue that the officers had probable cause to arrest plaintiff and therefore there was no constitutional

7  violation.  In the alternative, defendants argue that Officer Rodriguez is entitled to qualified

8  immunity and plaintiff has not presented a basis for municipal liability.

9              **1.      Probable Cause**

10      "A police officer has probable cause to arrest a suspect without a warrant if the available

11  facts suggest a 'fair probability' that the suspect has committed a crime." *Tatum v. City and County*

12  *of San Francisco*, 441 F.3d 1090, 1094 (9th Cir. 2006).  Probable cause is an objective standard

13  requiring the court to consider the totality of the circumstances known to the arresting officers. *John*

14  *v. Youngquist*, 515 F.3d 936, 940 (9th Cir. 2008).  Here, the officers encountered a witness who was

15  emotional, afraid of plaintiff, and claimed plaintiff kicked her.  She had bruises which were

16  consistent with and which she claimed were caused by plaintiff kicking her.  In addition, plaintiff

17  intercepted the officers and preemptively attempted to explain away Ms. Pinckney's injuries and

18  undermine her credibility, behavior which was consistent with a domestic violence suspect. *See*

19  North Decl., Ex. G at 96:24-97:11 (explaining that many suspects will say the victim is "habitually

20  drunk and falls down, and that's how she got the injuries" or that "[s]he's crazy" and "habitually

21  lies").  These facts were sufficient to support a reasonable belief that plaintiff had committed

22  domestic violence.

23      Relying on *Arpin v. Santa Clara Valley Transportation Agency*, 261 F.3d 912 (9th Cir.

24  2001), plaintiff argues that an arrest cannot be based solely on an "unexamined charge" made by a

25  victim.  In *Arpin*, the plaintiff alleged that a bus driver made a false criminal report for battery which

26  led to her arrest. *Id.* at 918.  Citing *Fuller v. M.G. Jewelry*, 950 F.2d 1437, 1444 (9th Cir. 1991), the

27  court noted that "[i]n establishing probable cause, officers may not solely rely on the claim of a

28  citizen witness that he was a victim of a crime, but must independently investigate the basis of the

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

witness' knowledge or interview other witnesses." *Arpin*, 261 F.3d at 925.  On the defendants' motion to dismiss, the court found the allegations in the complaint sufficient to "raise an inference that [the officers] arrested Arpin based on [the driver's] unexamined charge." *Id.* at 925 (noting, however, that evidence outside the complaint indicated the officers had interviewed additional witnesses).

Plaintiff treats each individual statement made to the officers in this case as an "unexamined charge" that required further investigation.  However, *Arpin* dealt with an unelaborated accusation of a crime.  As more clearly explained in *Fuller* and cases after *Arpin*, the statements of a victim, standing alone, may supply probable cause so long as the victim provides sufficiently detailed facts regarding the incident.  *See Fuller*, 950 F.2d at 1444; *Peng v. Penghu*, 335 F.3d 970, 978 (9th Cir. 2003).  In *Fuller*, the court rejected an argument "that merely because citizen witnesses are presumptively reliable, the officers . . . had no duty to examine further the basis of the witness' knowledge or talk with any other witnesses."  950 F.2d at 1444.  Rather, the informant must still "furnish underlying facts sufficiently detailed to cause a reasonable person to believe a crime had been committed and the named suspect was the perpetrator."  *Id.* (quoting *People v. Ramey*, 16 Cal.3d 263, 269 (1976)).  In *Peng*, after noting the holdings in *Arpin* and *Fuller*, the court held that the officer properly relied solely on the victim's statement in determining that probable cause existed.  335 F.3d at 978.  The victim had explained to the officer the following: the plaintiff approached her and asked for certain documents; when she refused to hand him the documents "he reached out and grabbed the documents from [her] right hand and refused to let go, engaging in a tug of war with [her] over the documents"; "[he] then raised his right first as though he was going to strike [her] in the face"; "fearing for her safety, [she] released the documents"; the plaintiff then took the documents, left, returned twenty minutes later, and refused to return the documents.  *Id.* at 973.  These specific details are not unlike the details Ms. Pinckney provided to the officers that she was afraid plaintiff would kill her, that she had been kicked by plaintiff while in bed, and that her bruises had been caused by the kick.  Moreover, Ms. Pinckney's statements were corroborated by the fact that she was visibly bruised and plaintiff himself told the officers that she had slept with a knife

1   under her.  Thus, the "charges" of which plaintiff complains are the very details that supported the

2   officers' conclusion in this case.

3          Plaintiff argues that the officers failed to evaluate Ms. Pinckney's credibility and there were

4   "red flags" that would have led a reasonable officer to believe additional investigation was

5   necessary.  Specifically, plaintiff argues that Ms. Pinckney made two "nonsensical" statements that

6   should have caused the officers concern as to whether she could accurately perceive events or if she

7   was confused as a result of intoxication: (1) that plaintiff made Ms. Pinckney go to the hospital and

8   say she was crazy to get medications that plaintiff wanted her to take; and (2) that she was afraid

9   plaintiff would have her deported and have her child taken away from her.  On their face, these

10  statements are not patently incredible.  Nor does plaintiff cite any precedent suggesting the officers

11  were required to follow up on these statements, which were unrelated to the incident at hand.  Thus,

12  while these statements were part of the totality of the circumstances that the court must consider,

13  they do not preclude a finding of probable cause.

14         Plaintiff also argues that the officers failed to interview him as required by San Jose Police

15  Department procedure and that he was not given an opportunity to respond to Ms. Pinckney's

16  allegations of domestic violence.  However, by plaintiff's own admission, he gave Officer Rodriguez

17  a detailed statement when the officer arrived on the scene.  Officer Rodriguez did not conduct a

18  formal interview because he believed plaintiff would simply repeat the same things.  Although the

19  officers may have been able to elicit a more complete picture of the situation by continuing their

20  investigation or confronting plaintiff with Ms. Pinckney's statements, the probable cause inquiry

21  deals only with the facts actually known to the officers.  *Devenpeck v. Alford*, 543 U.S. 146, 152

22  (2004) ("Whether probable cause exists depends on the reasonable conclusion to be drawn from the

23  facts known to the arresting officer at the time of the arrest."); *Nelson v. Inyo County Sheriffs Dep't*,

24  2007 WL 2711399, at *4 (E.D. Cal. Sept. 14, 2007) (finding plaintiff's argument that he was not

25  given "equal opportunity" to explain himself irrelevant to the probable cause determination).  Based

26  on the totality of the circumstances, the court find the officers had probable cause to arrest plaintiff,

27  and summary judgment in defendants' favor is appropriate.

28

**United States District Court**
For the Northern District of California

1

### 2.    Qualified Immunity

2    Even if the officers did not have probable cause, they would be entitled to qualified

3    immunity for their arrest of plaintiff.  Qualified immunity protects an officer from personal liability

4    unless the constitutional violation was "clearly established" at the time of the alleged misconduct.

5    *Rodis v. City and County of San Francisco*, 558 F.3d 964, 968-69 (9th Cir. 2009).  Not only must the

6    right have been established in a general sense, but "[t]he contours of the right must be sufficiently

7    clear that a reasonable official would understand that what he was doing violates that right."  *Id.* at

8    969 (quoting *Anderson v. Creighton*, 483 U.S. 635, 639-40 (1987)); *see also Stoot v. City of Everett*,

9    582 F.3d 910, 921-22 (9th Cir. 2009).  In *Stoot*, the court held that the officer "could not rely solely

10   on the uncorroborated, inconsistent statements of [a] very young child to establish probable cause."

11   582 F.3d at 921.  However, the court affirmed the district court's holding that the officer was entitled

12   to qualified immunity.  *Id.* at 922.  The court noted that "the [plaintiffs] have not cited a single case

13   squarely holding that an officer cannot rely solely on the statements of a child sexual assault victim

14   obtained during a personal interview to establish probable cause, nor are we aware of one."  *Id.*

15   Here, plaintiff argues that the constitutional violation was clearly established because, under

16   *Arpin*, an arrest may not be based solely on an "unexamined charge" and officers must conduct an

17   independent investigation of the allegations.  However, as discussed above, *Arpin* is not as broad as

18   plaintiff argues.  Moreover, *Arpin* and related cases do not so resemble the present case that the

19   officers would be on notice that an arrest was unlawful under the present circumstances.  Similar to

20   the plaintiffs in *Stoot*, plaintiff has not presented any cases squarely holding that officers cannot rely

21   on the statements of an intoxicated domestic violence victim, coupled with her demeanor and

22   physical injuries, to establish probable cause.  Thus, Officer Rodriguez is entitled to qualified

23   immunity.

### 3.    Municipal Liability

24

25   A city may be held liable under § 1983 for "execution of a government's policy or custom,

26   whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent

27   official policy."  *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 693 (1978).

28   At his deposition, plaintiff asserted that the City has "a policy with respect to their taking positive

1  action in connection with complaints of domestic violence, which results in the arrest and

2  incarceration of individuals like myself where there are not sufficient facts to warrant their arrest."

3  North Decl., Ex. C at 150:9-15.  Defendants argue that there is no factual basis for this claim.

4  Defendants cite the San Jose Police Department duty manual, which provides that an arrest shall be

5  made in the event that there is probable cause.  *Id.*, Ex. H.  Plaintiff does not respond to this

6  argument or point to any evidence of a policy or custom that led to deprivation of his constitutional

7  rights.  Nor has plaintiff presented evidence to support a claim based on failure to train or supervise.

8  Thus, summary judgment in the City's favor is appropriate.

9  ### C.     State Law Civil Rights Claim

10  Cal. Civ. Code § 52.1 makes actionable an interference or attempt to interfere "by threats,

11  intimidation, or coercion" with the exercise or enjoyment of federal or state constitutional rights.

12  Defendants argue that, in addition to failing to demonstrate a constitutional violation, plaintiff's

13  claim fails because there are no allegations that any officer threatened, intimidated, or coerced

14  plaintiff.  Plaintiff does not respond to this argument in his opposition or point to any evidence that

15  would support a claim under the statute.  Thus, summary judgment in defendants' favor is

16  appropriate.

17  ### D.     Negligence Claim

18  Plaintiff asserts a claim for negligence, alleging various duties owed to him by defendants

19  including: to refrain from wrongfully arresting plaintiff or violating his constitutional rights; to use

20  reasonable and appropriate police procedures and tactics; and, on the part of the City and Chief

21  Davis, to properly hire and train employees and promulgate lawful policies and procedures.

22  Defendants argue that the officers did not act negligently and the City cannot be directly liable for

23  negligence unless there is statutory authorization, which does not exist here.

24  As discussed above, the officers acted reasonably in their investigation and their arrest of

25  plaintiff.  Thus, plaintiff's claim fails to the extent it arises out of plaintiff's allegedly wrongful

26  arrest.  Plaintiff does not respond to defendants' arguments or come forward with evidence of other

27  duties the officers owed to him which may have been breached.  In addition, direct tort liability

28  against a public entity requires statutory authorization.  *See Munoz v. City of Union City*, 120 Cal.

App. 4th 1077, 1112-13 (2004) (holding city could not be directly liable based on negligent training

and supervision or failure to promulgate clearer procedures).  Plaintiff has not cited any statutory

basis for the City's liability here.  Thus, summary judgment in defendants' favor is granted on

plaintiff's negligence claim.

### E.      Intentional Infliction of Emotional Distress Claim

A claim for intentional infliction of emotional distress requires a showing of (1) outrageous

conduct by the defendant, (2) intent to cause or reckless disregard of the probability of causing

emotional distress, (3) severe emotional distress, and (4) actual and proximate causation of the

emotional distress.  *Trerice v. Blue Cross of Am.*, 209 Cal. App. 4th 878, 883 (1989).  To be

"outrageous," conduct "must be so extreme as to exceed all bounds of that usually tolerated in a

civilized society." *Id.*  "Where a plaintiff fails to establish a Fourth Amendment violation, the

officer's behavior is generally not outrageous." *Burke v. County of Alameda*, 2009 WL 3748172 (9th

Cir. 2009) (citing *Long v. City of Honolulu*, 511 F.3d 901, 908 (9th Cir. 2007)).  Here, plaintiff has

not presented evidence of any facts that would amount to outrageous conduct.

Plaintiff specifically argues that the following are outrageous: Officer Rodriguez's failure to

confirm Ms. Pinckney's statements; his failure to inform plaintiff of the charges against him and give

him an opportunity to respond; his failure to interview plaintiff as required by department protocol;

his opinion that nothing the suspect says can negate probable cause to arrest; his inability to recall a

time in the last ten years when he responded to a domestic violence call where the suspect was

present, and the suspect was not arrested; and the City and Chief Davis' failure to adequately train

Officer Rodriguez or establish protocols that would prevent the complained of conduct.  As

discussed above, the officers acted reasonably in relying on Ms. Pinckney's statements and

interacting with plaintiff.  Officer Rodriguez's belief about hypothetical situations or memory of past

unrelated incidents, even if true, do not support a claim that Officer Rodriguez acted outrageously

and harmed plaintiff in this case.  Thus, summary judgment in defendants' favor is appropriate.

///

///

///

1

**III. ORDER**

2

For the foregoing reasons, the court GRANTS defendants' motion for summary judgment.

3

4

5

DATED:      1/5/10

*Ronald M Whyte*
_____
RONALD M. WHYTE
United States District Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
For the Northern District of California

1   **Notice of this document has been sent to:**

2   **Plaintiff (pro se):**

3   Marc Leroy Pinckney                    marcpinckney@gmail.com

4   **Counsel for Defendants:**

5   Clifford S. Greenberg                  cao.main@sanjoseca.gov
    Richard D. North                       cao.main@sanjoseca.gov
6

7

8   Counsel are responsible for distributing copies of this document to co-counsel that have not
    registered for e-filing under the court's CM/ECF program.
9

10

11  **Dated:**   1/6/10                                     TER
                                          **Chambers of Judge Whyte**
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28